OPINION OF THE COURT
Lewis L. Douglass, J.
This prosecution arises out of a fight between a brother, the *183 defendant, and his sister. Sometime during the fight the sister’s eight-year-old son was stabbed in the stomach with a kitchen knife.
The sister claimed the brother came to her apartment, and during an argument, he slapped her once or twice, pushed her over a washing machine and while they were arguing, he suddenly turned and stabbed her eight-year-old son who was standing next to her.
The defendant claimed the sister had the knife, and in order to protect himself, he grabbed her in a bear hug, and while so holding her, she accidently stabbed her son.
The episode led to an eight-count indictment charging attempted murder and assault of the child, assault on the sister and four burglary counts based on the theory that the defendant assaulted his sister and her child after she told him to leave the apartment. The indictment also includes one count of criminal possession of a weapon, the kitchen knife.
The jury acquitted on all counts involving assaults on the child, and on the count, charging possession of a dangerous weapon. From that verdict, it is apparent that the jury had some doubt about who actually stabbed the child, and only agreed that the defendant slapped his sister once or twice during the argument.
At the close of the prosecutor’s case, the defendant moved to dismiss all counts. The motion was denied.
Following the jury’s verdict, the court sua sponte reconsidered the sufficiency of the evidence pertaining to the burglary and assault counts involving the sister, since that motion was then no longer pro forma. If there was no evidence to support the conviction of the charges involving the sister, the defendant was entitled to immediate release. The burglary was the technical burglary by the brother, of not leaving the sister’s apartment when she told him to do so. One of the elements of that burglary was to inflict physical injury during the burglary. Therefore, both the burglary count, and the assault count would require evidence that the sister sustained the kind of pain from the slaps which would raise those slaps to the level necessary to support a criminal conviction, that is, substantial pain rather than discomfort which is associated with slaps and pushes.
A review of the sister’s testimony shows no evidence that she sustained any pain, much less substantial pain. The only description of the fight is her testimony that he "pushed me *184 and then hit me in the face” and that she "fell into a washing machine.” In response to a question "Did he push you hard?” the answer was "He pushed me a little not too hard.” There is no testimony about pain or about a request for medical attention. Any fair reading of her testimony would lead to the conclusion that the episode involved one or two slaps and some pushing prior to the tragic stabbing of the eight year old.
The court, therefore, issued a decision dated March 31, 1991 dismissing the burglary and assault counts involving the sister, on the grounds that there was no evidence of pain much less the substantial pain which is necessary to bring slaps to the level of criminal behavior, citing People v Tabachnik (131 AD2d 611) and People v Estes (131 AD2d 872).
Following the court’s order dismissing those charges, the prosecutor moved to reargue, and advanced the argument that the court should have substituted for the jury’s conviction of burglary in the first degree, which includes the element of inflicting substantial pain, a conviction of burglary in the second degree, which would involve the element of remaining unlawfully in the sister’s apartment intending to commit a crime and that crime under the People’s theory, would be intending to inflict serious injury.
The prosecutor relies on People v Latora (128 AD2d 807) where the Second Department found, an abuse of discretion by the Trial Judge, for dismissing burglary in the first degree, which includes the element of substantial pain, rather than substituting a conviction of burglary in the second degree, which would only involve the element of entering or remaining unlawfully at night with the intent to commit a crime.
In holding that a Trial Judge may substitute a conviction, for a charge never submitted to a jury Latora (supra) relies on CPL 330.30 which provides "upon motion of the defendant” (emphasis added), the court may modify a verdict. In this case no motion was made by the defendant.
CPL 470.15 (2) (a) does provide that upon appeal the Appellate Division may modify the judgment by changing it to one of conviction of the lesser offense.
Although Latora (supra), in addition to citing CPL 330.30 also cites CPL 470.15 (2) (a) to support that court’s conclusion that it was an abuse of discretion by the Trial Judge not to change the verdict there is no statutory or appellate language, other than Latora which grants to the Trial Judge the ex *185 traordinary power to substitute for the jury’s conviction, a count never submitted to a jury.*
The apparent contradiction between Latora (supra) and the language in CPL 330.30 and 470.15 (2) (a) is best understood by stepping out of the formal language of the statutes and looking at the concerns which give rise to the Latora decision.
In usual burglary cases an intruder may enter a home, assault the occupants, but the injuries do not rise to the level of serious injury. Faced with the dilemma of rewarding a burglar because he or she was unsuccessful in seriously hurting the occupant, the Latora court found that dismissal rather than substituting a conviction for the lower count of burglary, second degree, to be an "improvident exercise of discretion.” Significantly that court did not conclude that in every case the conviction of the lower count must be substituted, but said the Trial Judge "may” modify the verdict.
The prosecutor further argues that the Court of Appeals in People v Dlugash (41 NY2d 725) mandates that the lower count, burglary, second degree, must be substituted for the jury’s conviction of burglary, first degree. But Dlugash like Latora (supra) is predicated on optimal language of CPL 470.15 (2) (a) which provides that the Appellate Division "may” modify the judgment as opposed to mandatory language which would have been the case had the word "must” been used.
Thus, even accepting, arguendo, that the prosecutor’s reading of Latora (supra) is correct the question here is not one of what law is to be applied, but rather whether the Trial Judge, on the facts of this case, improperly exercised his discretion in declining to substitute burglary in the second degree for the jury’s conviction of burglary in the first degree.
In Latora (supra) and the usual burglary case, the critical issues — "Did the defendant break in?”, "Did he assault the occupants?”, are fully litigated and resolved by the jury. The only issue is how seriously were the occupants hurt. And, in the vast majority of these cases it can usually be inferred from the fact that the intruder is in the home at night that he entered with the intent to commit a crime.
This case is altogether different. Here, there is no dispute *186 that the brother entered lawfully and that the fight erupted after he had been in the apartment for a period of time and after two other guests had left. He is labeled as a burglar only by the most technical reading of the statute by inferring that the sister must have said "get out” when the fight started, although since focus of the case was on the child, there is no direct evidence on this point. It is beyond question that if the only claim was that a brother and sister got into an argument which involved slaps and a push described by the sister as "not too hard”, this matter would not have been prosecuted in the criminal court. The matter was brought to the Supreme Court as a burglary charge, only because of the stabbing of the child.
Because the issue here is whether the Trial Judge has abused his discretion, it is important to understand the atmosphere of the trial. There was an overwhelming question of why an uncle, without warning, would stab his eight-year-old nephew, particularly since the child described the relationship as one would expect between uncle and nephew, he "took me to the park.”
The child did testify that he was stabbed by his uncle. But that testimony came two years after the event and the defense argues that the child believed his uncle stabbed him because he had been told that so often by his mother, the defendant’s sister. On the night of the episode the sister told the police the child was stabbed when he got between her and her brother. The grandmother, called as a defense witness, said the child, while in the hospital, told her he was stabbed when the sister and brother were having a fight, consistent with the brother’s version. Here the acquittal of the charges of the child is perfectly understandable.
Even assuming Dlugash (supra) creates authority for a Trial Judge to modify a jury’s verdict, that can only occur when all the issues involved in the lesser included count are argued before the jury, except the level of seriousness.
Here, because the case was about the child there are a variety of issues about whether the defendant committed a technical burglary by not leaving after the fight started, which were never argued to the jury. Although the sister claims the brother said "I kill you” that comment was never referred to by either lawyer in arguing to the jury, and it was denied by the brother.
The jury was never told that a burglary could involve the *187 intent to inflict serious injury even if that intent was not accomplished. And if these issues had been raised, in view of the jury decision, which suggests that the jury did not believe the brother had the knife, having found the brother not guilty on that count, these issues would have been resolved in the brother’s favor.
Moreover, these issues could have been put to the jury by submitting as a lesser included count burglary, second degree. But neither the defense nor the prosecutor made such a request. This case was about the child. The theory that burglary was committed because the brother intended to inflict serious injury after the sister told him to leave, was never raised at any bench conference or during the trial. That theory first surfaced in support of this motion.
The only justification to grant this application would be that the prosecutor disagrees with the jury, since it is inconceivable the prosecutor believes a felony conviction should be based on two slaps and a push.
Having now reconsidered this matter, and having reviewed the prosecutor’s written papers in support of his motion, the court adheres to its original decision dismissing counts 3 and 7 (the jury having acquitted on all other counts).

 Both People v Holmes (52 NY2d 976) and People v Dlugash (41 NY2d 725) involve the question of whether the Appellate Division properly exercised its authority, under CPL 470.15 which gives to the Appellate Division statutory authority to modify a jury verdict.